# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

PHYLIS E. SAVAGE                                                                 PLAINTIFF


v.                                           NO. 4:08CV00522 HDY


MICHAEL J. ASTRUE,                                                            DEFENDANT
Commissioner of the Social
Security Administration


<u>MEMORANDUM OPINION AND ORDER</u>


<u>BACKGROUND</u>.   The record reflects that in October of 2005, plaintiff Phylis E.

Savage ("Savage") filed applications for disability insurance benefits and supplemental

security income benefits pursuant to the provisions of the Social Security Act ("Act").

Her applications were denied initially and upon reconsideration.   She next requested,

and received, a <u>de</u> <u>novo</u> administrative hearing before an Administrative Law Judge

("ALJ").   In November of 2007, the ALJ issued a decision adverse to Savage.   She

appealed the adverse decision to the Appeals Council.   The adverse decision was

affirmed by the Appeals Council and became the final decision of the Commissioner of

the Social Security Administration ("Commissioner").   In June of 2008, Savage

commenced the proceeding at bar by filing a complaint pursuant to 42 U.S.C. 405(g).

In the complaint, she challenged the final decision of the Commissioner.

STANDARD OF REVIEW.  The sole inquiry for the Court is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." See Id. at 1012.

THE COMMISSIONER'S FINDINGS.  The Commissioner made findings pursuant to the five step sequential evaluation process.  At step one, the Commissioner found that Savage has "engaged in [substantial gainful activity] since at least the first quarter of 2006 and was not disabled after December 31, 2005." See Transcript at 14.  The question for the Commissioner was whether Savage was "disabled from her alleged onset date of February 15, 2004, through December 31, 2005." See Id.  At step two, the Commissioner found that Smith had the following severe impairments: "low back strain; narrowing in her left hip joint; arthritic changes in her right shoulder; borderline intellectual functioning; and adjustment disorder, depression, moderate level." See Id. At step three, the Commissioner found that Savage did not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations.  The Commissioner then assessed Savage's residual functional capacity.  The Commissioner found that Savage retained sufficient residual functional capacity to perform the exertional requirements of light work.  In so finding, the Commissioner specifically found the following:

-2-

… [Savage] was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit six hours in an eight-hour workday and stand/walk six hours in an eight-hour workday.  In addition, … due to some dizziness, [Savage] was unable to climb scaffolds, ladders and ropes.  Further, … [Savage] was able to engage in work that involved only non-complex, simple instructions and little judgment, work that was learned by rote with few variables, work that involved only superficial contact incidental to work with the public and work where the supervision was concrete, direct and specific.

See Transcript at 16-17.  The Commissioner then proceeded to step four.  At that step, the Commissioner found that between February 15, 2004, and December 31, 2005, Savage was capable of performing her past relevant work as a hand presser because the work did not require the performance of work-related activities precluded by her residual functional capacity.  On the basis of the foregoing findings, the Commissioner concluded that Savage was not under a disability as defined by the Act during the relevant period.

SAVAGE'S ASSERTIONS.  Are the Commissioner's findings supported by substantial evidence on the record as a whole?  Savage thinks not and maintains that the Commissioner erred in the following respects: (1) in failing to consider her impairments in combination; (2) "in his analysis and credibility findings in regard to [her] subjective complaints of pain," see Document 11 at 2; (3) in finding that she retained the residual functional capacity to perform light work; (4) in finding that she retained the residual functional capacity to perform her past relevant work; and (5) in failing to fully and fairly develop the record.

-3-

IMPAIRMENTS IN COMBINATION.   Savage first maintains that the Commissioner erred in failing to consider her impairments in combination.   She maintains that the Commissioner instead "fragmentized" her subjective allegations, as well as her fibromyalgia, fatigue, difficulty in raising her arm, dysthymia, and alcohol dependence.

At step two, the Commissioner is obligated to identify the claimant's impairments and determine whether they are severe.   An impairment is severe if it has "'more than a minimal effect on the claimant's ability to work.'"   See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [quoting Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989)].   At step three, the Commissioner is obligated to determine whether, when considered individually and collectively, the impairments meet or equal a listed impairment.   See Sullivan v. Zebley, 493 U.S. 521 (1990); Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). The determinations at those steps are medical ones.   See Bowen v. Yuckert, 482 U.S. 137 (1987) (step two); Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990) (step three).

Having reviewed the record, the Court is satisfied that the Commissioner adequately considered Savage's impairments in combination.   At step two, the Commissioner identified the impairments alleged by Savage and found that, with only a few exceptions, they were all severe.   The impairments that the Commissioner found not to be severe were the following: anxiety, alcohol dependence, dysthymia, fibromyalgia, and arthritis in her hands and fingers.   The severity of those impairments was discounted because there was no medical evidence to support them.

-4-

At step three, the Commissioner found that Savage did not have an impairment listed in, or medically equal to one listed in, the governing regulations. The Commissioner specifically noted that her impairments were considered in combination.

In assessing Savage's residual functional capacity, the Commissioner considered the limitations caused by her impairments. In making that assessment, the Commissioner considered the limitations caused by all of her impairments, including the impairments that were not severe.

Although a more extensive treatment of the combined effect of Savage's impairments would have been helpful, the Court is satisfied that the Commissioner adequately considered Savage's impairments in combination. Substantial evidence on the record as a whole supports the Commissioner's findings with regard to that issue.

SUBJECTIVE COMPLAINTS OF PAIN. Savage next maintains that the Commissioner erroneously discounted her subjective complaints of pain. The only specific example she cites is as follows:

> The ALJ opined that "there is no evidence that [Savage] has undergone anything other than conservative care for her allegedly disabling pain in her back, hips and right shoulder or that she has been referred to a specialist for evaluation and/or treatment of her symptoms." … On the contrary, … Savage has undergone numerous Cortisone injections and been told that she needs an MRI on her right shoulder, which she is unable to afford. Nonetheless, … Savage has consistently attempted to receive treatment and medications to alleviate her pain.

See Document 11 at 15.

-5-

In Pearsall v. Massanari, 274 F.3d 1211, 1217-1218 (8th Cir. 2001), the Court of Appeals stated the following with regard to the proper evaluation of a claimant's subjective complaints:

> It is the [Commissioner's] responsibility to determine a claimant's RFC [i.e., residual functional capacity] based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations.   [Citation omitted]. Before determining a claimant's RFC, the [Commissioner] first must evaluate the claimant's credibility.   In evaluating subjective complaints, the [Commissioner] must consider, in addition to objective medical evidence, any evidence relating to: a claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions.   See Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984).   Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. Id. at 1322.   …   The credibility of a claimant's subjective testimony is primarily for the [Commissioner] to decide, not the courts.   [Citation omitted].

The Commissioner must make express credibility determinations and set forth the inconsistencies in the record which cause the Commissioner to reject the claimant's complaints.   See Eichelberger v. Barnhart, 390 F.3d 584 (8th Cir. 2004).   The Commissioner need not, however, explicitly discuss each Polaski v. Heckler factor but "only need acknowledge and consider those factors before discounting a claimant's subjective complaints."   See Id. at 590.[1]

---

[1]

An additional note is in order.  Complaints of fatigue are analyzed under the same standard as complaints of pain.  See Jackson v. Bowen, 873 F.2d 1111 (8th Cir. 1989).

The Court has reviewed the Commissioner's analysis of Savage's subjective complaints.  The Commissioner properly cited the <u>Polaski v. Heckler</u> factors and engaged in a fairly extensive analysis of most of the factors.  The Commissioner made note of evidence in the record that related to the factors and why the evidence tended to lessen her credibility as to the severity of her subjective complaints.  Savage has provided the Court with only one specific example of the Commissioner's alleged failure to credit her subjective complaints, that being, the Commissioner's finding that she sought nothing more than conservative care for the pain in her back, hips, and right shoulder and was not referred to a specialist for evaluation or treatment.[2]  The Commissioner could so characterize the nature of the care Savage received as she failed to show that receiving numerous Cortisone injections and being told that an MRI was necessary is something more than conservative care.  Moreover, she does not dispute that she was never referred to a specialist for evaluation or treatment.  Accordingly, the Court is satisfied that the Commissioner's treatment of the <u>Polaski v. Heckler</u> factors was adequate and is supported by substantial evidence on the record as a whole.

---

[2]

Savage did provide the Court with several general examples of the Commissioner's alleged failure to credit her subjective complaints, <u>e.g.</u>, "In the instant case, it would be difficult to draw such a conclusion [<u>i.e.</u>, the conclusion that her subjective complaints are not persuasive in light of the record] based on ... Savage's testimony at the hearing and the corroborative opinions of her treating physicians. Even the findings and conclusions of the state agency consultants support ... Savage's subjective allegations, <u>see</u> Document 11 at 15, and "... Savage's complaints of pain are well documented <u>and</u> supported by the medical evidence of record, <u>see</u> Document 11 at 16 [emphasis in original].  She failed, however, to specifically cite the evidence in the record that supported her assertions.

RESIDUAL FUNCTIONAL CAPACITY.  Savage next maintains that the Commissioner erroneously assessed her residual functional capacity.  She specifically maintains that the Commissioner erred in finding that she retained the residual functional capacity to perform light work and to perform her past relevant work.

Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations."  See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004).  The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses [the person's] ability to function in the workplace."  See Id. at 539.

Having reviewed the record, the Court is satisfied that the Commissioner properly assessed Savage's residual functional capacity.  The assessment is supported by the medical evidence as it reflects minimal impairments.  With regard to her physical impairments, the evidence reflects "tenderness over the right lower lumbar region," see Transcript at 111; a "mild right convex thoracic curvature," see Transcript at 126; a narrowing of joint spaces in her left hip, see Transcript at 158; and tenderness in her right shoulder and arthritic changes in the same shoulder, see Transcript at 161. Otherwise, the evidence of her physical impairments is unremarkable.  The treatment she received for her back, hip, and shoulder was, as the Commissioner properly found, conservative in nature as it appears that she was simply prescribed medication, given Cortisone injections, and told that an MRI was necessary.

With regard to Savage's mental impairments, the evidence is equally unremarkable. Although she has been treated for depression and/or anxiety on several occasions, she has benefitted from medication. Specifically, she reported that her symptoms improved when she took Limbitrol. <u>See</u> Transcript at 112-115, 127.[3] They became worse, though, when she stopped taking Limbitrol. <u>See</u> Transcript at 112-115. Such a pattern appears to have occurred on at least a couple of occasions.[4] Savage was also diagnosed as functioning within the borderline range intellectually, but it does not appear that she was "significantly impaired at [the] time in two or more areas of adaptive functioning." <u>See</u> Transcript at 130.

The non-medical evidence is also unremarkable, primarily because Savage's subjective complaints are not fully credible. Her daily activities; the type, dosage, effectiveness, and side effects of her medication; and the non-medication treatment she received indicate a less than disabling degree of pain.

---

[3]

For instance, Dr. Jeff K. Yates noted the following during a November of 2002 examination of Savage: "43-year-old in for recheck of depression after initiation of Limbitrol, she is doing 'great.'" <u>See</u> Transcript at 127.

[4]

It is worth noting the following excerpt from <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 802 (8th Cir. 2005):

Evidence of effective medication resulting in relief, for example, may diminish the credibility of a claimant's complaints. <u>See</u> <u>Rose v. Apfel</u>, 181 F.3d 943, 944 (8th Cir.1999). Guilliams admitted at his hearing that recent medication had relieved his pain. ... A failure to follow a recommended course of treatment also weighs against a claimant's credibility. <u>Gowell v. Apfel</u>, 242 F.3d 793, 797 (8th Cir.2001).

In the context of challenging the Commissioner's findings regarding residual functional capacity, Savage maintains the following: "in posing her hypotheticals to the vocational expert, the ALJ neglected to have him consider … Savage's borderline intellectual functioning."   <u>See</u> Document 11 at 19.   It is true that the ALJ did not specifically incorporate the words "borderline intellectual functioning" into the hypothetical questions.   <u>See</u> Transcript at 273-276.   It is obvious, however, that the ALJ incorporated the consequences of that limitation into the hypothetical questions as the ALJ asked the vocational expert to assume an individual needing work of the following nature: "noncomplex, simple instructions, little judgment, learned by rote, few variables, superficial contact incidental to work with the public, the supervision should be concrete, direct, and specific."   <u>See</u> Transcript at 273.

Accordingly, the Court finds that the Commissioner properly assessed Savage's residual functional capacity, and substantial evidence on the record as a whole supports the Commissioner's findings.   The Commissioner could and did find that she retained the residual functional capacity to perform light work and to perform her past relevant work.

<u>DEVELOPMENT OF THE RECORD</u>.   Savage last maintains that the Commissioner failed to fully and fairly develop the record.   She specifically maintains that the Commissioner ignored a notation made by a physician that a residual functional capacity assessment should be obtained and that the Commissioner neglected to "investigate [her] shoulder problems and suggested MRI …"   <u>See</u> Document 11 at 20.

The Commissioner has an obligation to fully and fairly develop the record.  <u>See</u> <u>Battles v. Shalala</u>, 36 F.3d 43 (8th Cir. 1994).  This obligation exists even if the claimant is represented by counsel at the administrative hearing.  <u>See</u> <u>Boyd v. Sullivan</u>, 960 F.2d 733 (8th Cir. 1992).   There is no bright line test for determining whether the Commissioner has fully and fairly developed the record; that determination is made on a case-by-case basis.  <u>See</u> <u>Battles v. Shalala</u>, 36 F.3d at 45.

Having reviewed the record, the Court is satisfied that the Commissioner fully and fairly developed the record.  It is true that Dr. Jay Rankin indicated on a psychiatric review form that a residual functional capacity assessment was "necessary," <u>see</u> Transcript at 139, and that Savage testified that she was told she needed an MRI on her right shoulder, <u>see</u> Transcript at 260.  Nevertheless, Savage has not shown how she was prejudiced by the Commissioner's failure to obtain an assessment or by the Commissioner's failure to order an MRI.  <u>See</u> <u>Onstad v. Shalala</u>, 999 F.2d 1232 (8th Cir. 1993) (inquiry is whether claimant was prejudiced or treated unfairly by how Commissioner did or did not develop record; absent unfairness or prejudice, remand not warranted).  Specifically, she has not shown what an assessment and/or an MRI would have revealed about her condition that was not revealed or otherwise established in the record as a whole.  With specific regard to the MRI, it is undisputed that she has arthritis in her right shoulder and the Commissioner so found.  She has not shown what additional information an MRI would have revealed.

Given the foregoing, Savage has not shown that the Commissioner failed to develop the record.  In fact, the Court is satisfied that the Commissioner fully and fairly developed the record.

CONCLUSION.  The Court finds that substantial evidence on the record as a whole supports the Commissioner's findings.   Specifically, the Commissioner considered Savage's impairments in combination, gave due regard to her subjective complaints of pain, could and did find that she retained the residual functional capacity to perform light work and her past relevant work, and fully and fairly developed the record.  Her complaint is dismissed, and all requested relief is denied.  Judgment will be entered for the Commissioner.

IT IS SO ORDERED this ____15____ day of June, 2009.


_____
UNITED STATES MAGISTRATE JUDGE